IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JESSICA J. DIXON                §
                                §
                    Plaintiff,  §
                                §  Civil Action No. 3:04-CV-1532-D
VS.                             §
                                §
MOORE WALLACE, INC.             §
                                §
                    Defendant.  §

MEMORANDUM OPINION
AND ORDER

This is an action by plaintiff Jessica J. Dixon ("Dixon"), who is African-American, alleging that her former employee, defendant Moore Wallace North America, Inc. ("Moore Wallace"),[1] discriminated against her based on race, subjected her to a racially hostile work environment, retaliated against her, and constructively discharged her, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. Moore Wallace moves for summary judgment. For the reasons that follow, the court grants the motion and dismisses the case.

I

Moore Wallace is in the business of commercial forms, labels, and printing and has manufacturing, distributing, warehousing, and sales facilities in several states.[2] John Burkholder

---

[1]Moore Wallace is sued as "Moore Wallace, Inc." Moore Wallace asserts in its brief, and Dixon does not dispute, that Moore Wallace's correct name is Moore Wallace North America, Inc.

[2]The court recounts the evidence in a light favorable to Dixon as the summary judgment nonmovant and draws all reasonable

("Burkholder"), who is Caucasian, was Circulation Director at Moore Wallace's Lewisville, Texas facility.   In April 2003 he hired Dixon as a Product Analyst to provide support to him and other team members.[3]   Shortly after her employment commenced, Burkholder and Dixon began to complain about each other to Jim Jehli ("Jehli"), the Human Resources Manager, and to Mike Mayes ("Mayes"), Burkholder's supervisor.   For instance, on July 9, 2003 Dixon advised Jehli that Burkholder had yelled at her on a couple of occasions and that he treated her differently from others in the group concerning matters like task lists and report requirements. And on August 11, 2003 she emailed Jehli and Mayes to complain about an incident with Burkholder the previous Friday.   She wrote that Burkholder had yelled at her, his comments were unsupportive, and he purposefully inconvenienced her plans to take the afternoon off.   Burkholder likewise complained, *inter alia*, that Dixon was disrespectful to him verbally and in emails and did not respond positively to feedback.

---

inferences in her favor.   *See, e.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).

[3]The only reasonable inference a jury could draw is that Burkholder made the decision to hire Dixon.   Although she asserts in her brief that the Human Resources Manager hired her and points to the offer of employment letter he signed, she acknowledged in her deposition that Burkholder made the final hiring decision.   The affidavits of Burkholder and Jehli also state that Burkholder hired Dixon.

- 2 -

Burkholder filed a Corrective Action Form dated October 3, 2003, which indicated it was a written warning to Dixon. He alleged that Dixon had engaged in inappropriate behavior toward a manager by, *inter alia*, not properly responding to feedback. Jehli, Burkholder, and Dixon met that day regarding the Form, in which Dixon was asked to have a more cooperative, less defensive approach. On October 6 Dixon responded to the meeting by email, requesting that Jehli remove the Form from her file because the issues had not previously been discussed with her and Burkholder's motivation for taking corrective action was retaliatory for her July 9th complaint. Jehli eventually agreed to remove the Form from Dixon's file, but he advised her that she needed to be less confrontational with management and to improve her communication.

Dixon filed various requests and complaints through the end of the year. On October 15 Dixon requested from Jehli that she be placed under the direct supervision of Paul Kasanders ("Kasanders"), who was assuming responsibility for the group from Mayes, because Burkholder had a vendetta against her. On October 22 Dixon requested a 25% pay increase from Kasanders. On October 23 Dixon complained to Jehli that Burkholder used profanity loudly while on the telephone and partially blocked the entrance to her cubicle with a table.

At the end of January 2004, Burkholder requested that Dixon travel to a trade show that had belonged to another team member.

- 3 -

When Dixon refused, Burkholder threatened to terminate her based on this refusal and on other insubordination.  At a January 29 meeting among Jelhi, Burkholder, and Dixon, Burkholder again requested that Dixon be terminated.  On January 30 Dixon complained to Jelhi that Burkholder was and had been discriminating against her based on her race.  She alleged that the double standard that Burkholder had set for her as compared to other employees was racially motivated.  She also stated that she had been discriminated against in terms of compensation based on her sex.

On February 4, 2004 Moore Wallace sent a human resources representative from another location to investigate Dixon's complaint.  Moore Wallace contends the investigation revealed poor team morale but no unlawful conduct.  As a result, Burkholder received a final written warning concerning his interpersonal and management skills and was demoted so that he no longer managed Dixon or others in the work group.  Dixon was reassigned to Kasanders' supervision, and she received a final written warning for engaging in unprofessional and uncooperative conduct.

On January 30, 2004 Dixon completed an Equal Employment Opportunity ("EEOC") questionnaire.  She alleged that the first harm occurred May 13, 2003 and continued through January 30, 2004, and she complained that the harassment and discrimination had been ongoing.  Specifically, she wrote that her manager had requested that she attend a trade show in a team member's absence, that she

refused, and that the following morning he had requested that she pack up her stuff and leave.

On February 12 Dixon completed a second EEOC questionnaire and filed an EEOC charge. In the questionnaire, she alleged that harm began on May 13, 2003 and continued until the present. She alleged several instances of discrimination, including Burkholder's blocking her cubicle, his request that she submit her to do lists in a different format from others in the department, discrimination in compensation, and his yelling at her that he wanted no food at a trade show booth, when he had earlier that day eaten at the booth. In the charge, she checked the boxes for discrimination on the basis of race, sex, and retaliation, and she alleged that she had been harassed and treated differently from her non-black coworkers beginning on the date of her hire on April 7, 2003.

Dixon's complaints to Kasanders and Jelhi about Burkholder's actions continued. For instance, on February 25 she emailed Kasanders and Jehli that Burkholder had snatched a catalog from her while she answered his questions, and on March 1 she complained that Burkholder entered her cubicle, making demands. In April 2004 she complained that he yelled at her from his desk and paced threateningly outside her cubicle.

On April 12, 2004 the EEOC notified Dixon by letter that it would be issuing a Dismissal and Notice of Right to Sue in the next few days. The following day, Dixon reported that she was medically

unable to return to work.  On April 19 the EEOC issued to Dixon its formal Dismissal Notice and Right to Sue.  She resigned from Moore Wallace on April 30, 2004 and received and accepted a higher-paying job at a different company.

Dixon filed this suit *pro se* in July 2004, although her present counsel assisted her in drafting her complaint.  She alleges violations of Title VII, 42 U.S.C. §§ 1981 and 1983, and Texas common law.  The complaint contains only one cause of action, however, in which she cites Title VII.  Dixon's counsel later entered an appearance.  Moore Wallace moves for summary judgment on all of Dixon's claims.  Dixon opposes the motion.[4]

---

[4]By its February 27, 2006 order, the court ordered Dixon's summary judgment response unfiled, because she failed to comply with various local civil rules.  Specifically, the court advised her that her brief must comply with N.D. Tex. Civ. R. 56.5(c), which provides that "[a] party whose motion or response is accompanied by an appendix must include in its brief citations to each page of the appendix that supports each assertion that the party makes concerning the summary judgment evidence."  Although Dixon complied generally with the order when she filed her March 9, 2006 response, she still frequently fails to cite properly to the summary judgment record to support her contentions.  *See, e.g.,* P. Br. 5.  Occasionally, she cites to the entirety of her appendix, which consists of her eight-page affidavit.  *See, e.g., id.* at 4, 6, and 8.  These citations are inadequate under Rule 56.5(c) because they do not refer the court to a specific page of her appendix.  Despite Dixon's repeated failure to comply with Rule 56.5(c), given the relative brevity of her affidavit, the court has attempted to locate the specific pages that contain the evidence on which she relies.

II

As a preliminary matter, the court must identify the claims that Dixon is asserting against Moore Wallace and ascertain their scope. Dixon asserts in her complaint violations of three federal statutes and of Texas common law. Moore Wallace maintains that her lawsuit alleges only Title VII claims for race discrimination, retaliation, and possibly race-based hostile work environment.

Dixon concedes in her brief that she is not asserting a claim under 42 U.S.C. § 1983. She fails to respond to Moore Wallace's contention that she has not properly pleaded a claim under 42 U.S.C. § 1981. Her brief does not address this cause of action, either clearly alleging such a claim or, as with her putative § 1983 action, unquestionably dropping it. Moreover, as Moore Wallace points out, *see* D. Br. 1-2 n.2, this court has previously directed the attorney who represents Dixon to state clearly his intent to bring § 1981 claims. *See Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *1 n.1 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) ("If in future cases counsel intends to file § 1981 claims on behalf of his clients, he should clearly allege such a cause of action rather than merely advert to the statute."); *Grace v. Bank of Am.*, 2003 WL 23095993, at *1 n.1 (N.D. Tex. Dec. 23, 2003) (Fitzwater, J.) (addressing same pleading defect by same attorney). Finally, Dixon does not plead a specific violation of Texas common law nor does she contend in her brief that Moore Wallace violated

- 7 -

Texas common law.  Accordingly, the court holds that she either has
not alleged, or has explicitly dropped, any claims under § 1983,
§ 1981, or Texas common law.

Because Dixon asserts only Title VII causes of action, the
court must determine the nature of the claims.  Dixon alleges in
her complaint that she received "deferential [sic] treatment from
similarly situated Caucasian employees with regard to the working
conditions while on the job.  Thus, [Moore Wallace's] action[s] had
a disparate impact on" her.  Compl. ¶ 32.  This allegation blends
two distinct concepts: disparate treatment and disparate impact.
"Disparate-treatment discrimination addresses employment actions
that treat an employee worse than others based on the employee's
race, color, religion, sex, or national origin." *Pacheco v.
Mineta*, 448 F.3d 783, 787 (5th Cir. 2006) (citing *Int'l Bhd. of
Teamsters v. United States,* 431 U.S. 324 (1977)).
"Disparate-impact discrimination . . . addresses employment
practices or policies that are facially neutral in their treatment
of these protected groups, but, in fact, have a disproportionately
adverse effect on such a protected group." *Id.* (citing *Hebert v.
Monsanto,* 682 F.2d 1111, 1116 (5th Cir. 1982)).  Dixon does not
clearly allege the elements of a disparate impact claim.  Moreover,
Moore Wallace does not view the complaint as asserting such a
claim, and Dixon does not argue in her response brief that she is
alleging disparate impact.  The court likewise will not construe

her complaint as asserting a disparate impact claim.

Moore Wallace contends that Dixon's four claims⸺discrimination, hostile work environment, retaliation, and constructive discharge⸺fail on summary judgment (in addition to arguments regarding exhaustion and the after-acquired evidence rule).  In her brief, Dixon similarly complains about race discrimination, hostile work environment, retaliation, and constructive discharge.  Thus, as do the parties, the court understands Dixon's complaint to allege these four causes of action arising under Title VII, and it will limit its analysis accordingly.

III

Moore Wallace contends that Dixon's claims are limited by the scope of her EEOC charge because she failed to exhaust her administrative remedies when she did not include the claims in the charge.  It posits that Dixon did not file a charge complaining of the final written warning she received, any harassment that occurred after February 12, 2004 (the date of her EEOC charge), her April 2004 separation from employment as a constructive discharge, discriminatory pay, or the issues she now contends were retaliatory.  Moore Wallace maintains that it is too late for Dixon to file an EEOC charge that includes these claims because she resigned on April 30, 2004 and more than 300 days have since

passed.[5]

A

The scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers. On the one hand, because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, a less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance. With that balance in mind, this court interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label.

*Pacheco*, 448 F.3d at 788-89 (citations, internal quotation marks,

---

[5]In its reply brief, Moore Wallace also contends that, although Dixon's charge complains of conduct that occurred beginning April 7, 2003, she can only rely on conduct that occurred after April 18, 2003, because of the 300-day limitations period on filing a charge and the fact that she filed her charge on February 12, 2004. Because neither Dixon nor the court relies on any conduct that occurred in the eleven-day period between April 7 and April 18, 2003, the court need not address the merits of Moore Wallace's contention.

brackets, and emphasis omitted). *See also, e.g., Magana v. Tarrant/Dallas Printing*, 193 F.3d 517, 1999 WL 706122, at *1 (5th Cir. 1999) (per curiam) (unpublished opinion) ("We have held, however, that a judicial complaint filed pursuant to Title VII may encompass any kind of discrimination 'like or related to' allegations contained in the EEOC charge, as well as discrimination that grows out of such allegations during the pendency of the case before the Commission."). Based on Fifth Circuit decisions that precede *Pacheco* but that are similar in reasoning, this court has addressed what documents should be considered in determining whether a plaintiff has exhausted a claim.

> [W]hen determining whether a claim has been exhausted, the decision is to be based on the four corners of the EEOC charge, but the court may also consult related documents, such as a plaintiff's affidavit, her response to the EEOC questionnaire, and attachments to the response, when (1) the facts set out in the document are a reasonable consequence of a claim set forth in the EEOC charge, and (2) the employer had actual knowledge of the contents of the document during the course of the EEOC investigation. This test is subject, of course, to the established principles that the plaintiff's lawsuit may encompass any kind of discrimination like or related to the allegations contained in the EEOC charge, and that the court must not strictly construe the charge and require the complainant to allege every instance of discrimination.

*Hayes v. MBNA Tech., Inc.*, 2004 WL 1283965, at *6 (N.D. Tex. June 9, 2004) (Fitzwater, J.). "Because a person filing an EEOC charge is usually not represented by counsel, the court must not strictly

construe the EEOC charge and require the complainant to allege every instance of discrimination." *Id.* at *3 (citing *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993)).

B

Moore Wallace maintains that the acts of retaliation on which Dixon relies are barred. Dixon checked the retaliation box on her EEOC charge and asserted that she believed she had been "retaliated against for complaining of discrimination." D. App. 507. Considering the allegedly retaliatory acts that Moore Wallace maintains are barred,[6] the court concludes that she exhausted all components of her retaliation claim. This is because they are either like or related to the allegations contained in her EEOC charge, or the EEOC investigation that could reasonably be expected to grow out of her EEOC charge would include the acts of which she complains. *See, e.g., Pacheco*, 448 F.3d at 792 (holding that Title-VII plaintiff was not required to check certain box or recite specific incantation to exhaust administrative remedies; instead, plaintiff's administrative charge would be read somewhat broadly, in fact-specific inquiry into what EEOC investigations the charge could reasonably be expected to trigger).

Dixon also exhausted her retaliation claim based on the

---

[6]In its opening brief and reply brief, Moore Wallace relies on somewhat different lists of allegedly retaliatory acts that it contends exceed the scope of Dixon's EEOC charge. *Compare* D. Br. 14 n.3 *with* D. Reply Br. 4. Regardless, the court holds that Dixon exhausted all her retaliation claims.

- 12 -

allegedly retaliatory February 18, 2004 final written warning, even if that incident exceeded the scope of the charge, because it occurred after the filing.[7]   Dixon points out that she can file a lawsuit that includes an unexhausted retaliation claim where it is based on retaliation for having filed an EEOC charge.  *See Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. Unit A Aug. 1981) ("[I]t is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge . . . .").  Because Dixon alleges that Moore Wallace issued the February 18, 2004 final written warning in retaliation for her having filed the February 12, 2004 EEOC charge, that claim is exhausted as well.[8]

Accordingly, the court concludes that Dixon's retaliation claim does not exceed the scope of her EEOC charge.

---

[7]Moore Wallace maintains that all but one of the allegedly retaliatory acts occurred before Dixon filed her initial charge. *See* D. Reply Br. 3.   The court assumes that this is the one act that Moore Wallace contends occurred after she filed her EEOC charge.

[8]Dixon does not contend in the section of her brief that addresses exhaustion that she was given the February 18, 2004 final written warning because she filed the EEOC charge.   Rather, she states approximately 20 pages later, when she addresses the merits of her retaliation claim, that a "causal link [exists] between the EEOC charge and this warning."   P. Br. 35.

C

Moore Wallace contends that Dixon's discrimination claim is barred to the extent based on the February 18, 2004 final written warning she received, any harassment that occurred after February 12, 2004 (the date of her EEOC charge), her complaint that her April 2004 separation from employment was a constructive discharge, or discriminatory pay.[9]

Dixon alleged in her EEOC charge, in pertinent part:

> From the date of my hire on April 7, 2003, and continuing I have been harassed and treated differently than my non-Black co-workers. I am held to a different standard, required to do Analysis, required to turn in monthly reports and to do corrections. I believe that John Burkholder, Circulation Director is trying to make my job difficult.
>
> . . .
>
> I believe I have been discriminated against because of my sex, female, race, Black and retaliated against for complaining of discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

---

[9]In its reply brief, Moore Wallace relies on a somewhat different, and in some respects more specific, list of acts that it contends are barred, arguing that the following acts exceed the scope of her charge: Burkholder's request that Dixon send him an email to remove items from her to do list when other Caucasian workers did not have to complete such a task; giving Dixon a final written warning on February 18, 2004; Burkholder's partial blocking of her cubicle in October 2003; Burkholder's yelling at Dixon; and pay discrimination. It reiterates the assertion that her claims based on alleged harassment after February 12, 2004, discriminatory pay, or her April 2004 resignation from employment are barred. The court will address the claims identified in Moore Wallace's opening brief.

- 14 -

D. App. 507.   She does not now rely on other documents to illuminate her charge, such as an affidavit, response to an EEOC questionnaire, or attachments to a response.   Nor does she explicitly rely on any details of the EEOC investigation that stemmed from her complaint.   The court thus focuses on the substance of Dixon's charge.[10]

The question is thus whether the challenged instances of discrimination——the February 18, 2004 final written warning she received, any harassment that occurred after February 12, 2004 (the date of her EEOC charge), her complaint that her April 2004 separation from employment was a constructive discharge, or discriminatory pay——exceed the likely scope of an investigation into her charge allegations of, *inter alia*, "harassment" and "being treated differently."

It is clear that Dixon's pay discrimination claim is outside the scope of the allegations in the charge.   In *Stith v. Perot Systems Corp.*, 2004 WL 690884, at *6-*7 (N.D. Tex. Mar. 12, 2004) (Fitzwater, J.), *aff'd*, 122 Fed. Appx. 115 (5th Cir. 2005) (unpublished opinion), the court held that an employee failed to

---

[10]Dixon states that she is relying on the continuing violation doctrine.  She fails, however, to offer an explanation of how that doctrine, which extends the limitations period on otherwise time-barred claims, operates to save any of her claims from the requirement that they be administratively exhausted.  The court thus declines to entertain this argument.

exhaust her Title VII and ADEA[11] pay claims when she only complained in her charge that white associates were paid relocation expenses but that she was not. Specifically, the only kind of discrimination like or related to this allegation was discrimination based on the employer's failure to pay relocation expenses, not on another type of discrimination nor another form of a denial of equal pay. *Id.* By contrast, Dixon mentions nothing in her EEOC charge about any type of pay differential between herself and other employees nor any language relevant to this type of specific discrimination claim. Accordingly, her allegations that she was being "held to a different standard" and that Burkholder was "trying to make [her] job difficult" plainly do not encompass a pay discrimination claim. D. App. 507.

As to the February 18, 2004 final written warning, harassment that occurred after February 12, 2004 (the date of her EEOC charge), and Dixon's complaint that her April 2004 separation from employment was a constructive discharge, neither party argues why any of the incidents exceeds the likely scope of an investigation into the allegations of her charge. *Compare Douglas v. Mortenson Broad. Co.*, 2005 WL 2778538, at *2 (N.D. Tex. Oct. 24, 2005) (Sanders, J.) (declining to limit plaintiff's cause of action to single incident of sexual harassment alleged in EEOC charge,

---

[11]Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*

permitting allegations of multiple instances) *with Turman v. Greenville Indep. Sch. Dist.*, 2005 WL 659017, at *3 (N.D. Tex. Mar. 18, 2005) (Boyle, J.) (finding that employee failed to exhaust claim that took place outside time of discrimination identified in EEOC charge).   Moreover, neither party addresses whether these instances of alleged discrimination are more akin to incidents supportive of a claim of a pattern or practice of discrimination at Moore Williams, and thus within the likely scope of an investigation, or rather are discrete acts of discrimination, requiring that they be separately exhausted.   Moore Williams' argument regarding exhaustion is quite brief.   *See* D. Br. 14.   The court declines to resolve this particular point because it is both unnecessary to the disposition of this motion and the parties have failed to apprise the court adequately of their arguments. Instead, the court assumes *arguendo* that these incidents of discrimination do not exceed the likely scope of an investigation into the charge allegations and have thus been exhausted.[12]

---

[12]"There is disagreement in this circuit on whether a Title-VII prerequisite, such as exhaustion, is merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction." *Pacheco*, 448 F.3d at 788 n.7.   If exhaustion is a prerequisite to subject matter jurisdiction, the court must determine which of Dixon's claims is exhausted.   *See Hayes*, 2004 WL 1283965, at *2 ("[T]his court is obligated, *sua sponte* if necessary, to note a lack of subject matter jurisdiction . . . .") (citing *In re Bowman*, 821 F.2d 245, 246 (5th Cir. 1987)).   Although the court has previously relied on Fifth Circuit precedent in stating that exhaustion is a requirement of subject matter jurisdiction, *see, e.g., Underwood v. Hove*, No. 3:93-CV-1153-D, slip op. at 1-2 (N.D. Tex. Dec. 17, 1993)

The court thus concludes that Dixon cannot recover for discrimination based on allegedly discriminatory pay because she did not exhaust this claim administratively. It now turns to the merits of Dixon's exhausted claims for race discrimination, racially hostile work environment, retaliation, and constructive discharge.

IV

Moore Wallace maintains that it is entitled to summary judgment as to Dixon's race discrimination claim because she cannot establish a prima facie case since she suffered no adverse employment action and was not treated less favorably than similarly situated employees; Moore Wallace has articulated legitimate, nondiscriminatory reasons for its actions; and Dixon cannot raise a triable fact issue on her discrimination claims because she has offered no proof of pretext and she is not entitled to a mixed-motives approach and cannot survive summary judgment under that alternative.

---

(Fitzwater, J.), it has more recently reached the opposite conclusion, *see, e.g., Hayes,* 2004 WL 1283965, at *3 n.6; *Sanborn v. David A. Dean & Assocs.,* 1998 WL 690608, at *1 (N.D. Tex. Sept. 29, 1998) (Fitzwater, J.); *Gates v. City of Dallas,* 1997 WL 405144, at *1 (N.D. Tex. July 15, 1997) (Fitzwater, J.). Because it adheres to its more recent decisions that hold that exhaustion is not jurisdictional, the court may assume *arguendo* that Dixon exhausted her administrative remedies and reach the merits of her claims.

A

Because Moore Wallace will not have the burden of proof at trial on Dixon's race discrimination claim, it can meet its summary judgment obligation by pointing the court to the absence of evidence to support it. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Because it has done so, Dixon must go beyond her pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandatory if he fails to meet this burden. *Little*, 37 F.3d at 1076.

In the context of a Title VII race discrimination claim, Dixon must present sufficient direct or circumstantial evidence that would permit a reasonable trier of fact to find that her African-American race was a motivating factor in the adverse employment actions taken against her. *See, e.g., Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652 (5th Cir. 2004) (addressing Title VII claims for race, color, religion, sex, or national origin discrimination). "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379,

384 n.3 (5th Cir. 2003) (Fitzwater, J.) (age discrimination case) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)). Dixon does not contend that she possesses direct proof of race discrimination; she relies only on circumstantial evidence.

Accordingly, the court moves directly to the "modified *McDonnell Douglas* approach" under which Dixon can prove discrimination even if direct evidence is unavailable. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (age discrimination case); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). As modified, *McDonnell Douglas* consists of three stages. The court need not reach all three stages, however, because Dixon's claim falters at step one: establishing a prima facie case of discrimination.

> To establish a prima facie case of employment discrimination [Dixon] must establish that [she] (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably.

*Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (addressing discharge-based § 1981 claim); *see also Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir.) (citing *Singh v. Shoney's, Inc.*, 64 F.3d 217, 219 (5th Cir. 1995) (per curiam)), *cert. denied*, ___ U.S. ___, 126 S.Ct. 798 (2005).

B

In this case, the first two elements are uncontested. Regarding the third element, the Fifth Circuit "has a strict interpretation of the adverse employment element of [the] prima facie intentional discrimination case" under Title VII. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (addressing Title VII principles as informing § 1981 claim). "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action" for purposes of a discrimination claim under Title VII. *Id.* (quoting *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)).[13] "Rather, an adverse employment action consists of "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Id.* (emphasis omitted) (quoting *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002)).

---

[13]In *Pegram* the Fifth Circuit acknowledged "it is an open question . . . whether, and to what extent," the Supreme Court's decisions in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries v. Ellerth*, 524 U.S. 742 (1998), "lower the bar" for what comprises an "ultimate employment decision." *Pegram*, 361 F.3d at 282 n.8. On the facts before it, however, it was unnecessary for the panel to "evaluate whether the 'ultimate employment decision' doctrine is undermined by the aforementioned decisions." *Id.* Accordingly, this court continues to follow pre-*Pegram* precedent as to adverse employment actions in the discrimination context. Moreover, because it does not appear that the holdings or reasoning of the Supreme Court's recent decision in *Burlington Northern & Santa Fe Railway Co. v. White*, ___ U.S. ___, 2006 WL 1698953 (June 22, 2006), alters Fifth Circuit precedent concerning Title VII *discrimination*, as opposed to *retaliation*, jurisprudence, the court need not address the impact of that decision on today's case.

The effect of an action is evaluated according to an objective standard. *Id.* at 283 (holding that plaintiff's transfer to job "playing a supporting role" to prior job was not adverse employment action); *see also Shackelford v. Deloitte & Touche*, LLP, 190 F.3d 398, 407 (5th Cir. 1999) (concluding that denial of computer training to plaintiff who only performed related duties occasionally was not adverse employment action); *see also Ryburn v. Potter*, 155 Fed. Appx. 102, 107-08 (5th Cir. 2005) (per curiam) (unpublished opinion) (holding that purely lateral transfer does not constitute adverse employment action). The Fifth Circuit recently reiterated its admonition "not to expand the definition of adverse employment action to include 'events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee——anything that might jeopardize employment in the future." *Roberson v. Game Stop/Babbage's*, 152 Fed. Appx. 356, 360 (5th Cir. 2005) (per curiam) (unpublished) (citing *Shackelford*, 190 F.3d at 407).

C

Dixon contends she was discriminated against on the basis of her race in seven respects, and that these acts constitute adverse employment actions. She relies specifically on (1) Burkholder's statement on a couple of instances that she submitted reports without analysis, (2) Burkholder's request that she send him an email noting the items she had completed from her to do list, (3)

the final written warning given to her on February 18, 2004; (4) Burkholder's partial blocking of her cubicle with a work table in October 2003, (5) Burkholder's yelling at her approximately once a month, (6) pay discrimination, and (7) exposure to retaliatory conduct.[14]

With the exception of pay discrimination, none of the alleged adverse employment actions constitutes an ultimate employment decision such as hiring, firing, promoting, demoting, compensating, or granting leave. *See Pegram*, 361 F.3d at 282. And as discussed *supra* at § III(C), Dixon has failed to exhaust her administrative remedies with respect to her pay discrimination claim. Actions such as the partial blocking of her cubicle are generally "petty slights, minor annoyances, and simple lack of good manners." *Burlington N. & Santa Fe Ry. Co. v. White*, ___ U.S. ___, 2006 WL 1698953, at *10 (June 22, 2006) (addressing actions and harms forbidden by anti-retaliation provision of Title VII). And the only action that is arguably more adverse to Dixon——the February 2004 final warning——can only be characterized as a disciplinary filing, a supervisor's reprimand, or a poor performance evaluation,

---

[14]In her brief, Dixon also makes several statements of law, e.g., "[a]nother factor is whether the decision-maker was the 'cat's paw' —— *i.e.* an apparently neutral person who[se] actions were impermissibly influenced by those who had a retaliatory motive." P. Br. 18. She fails, however, to connect any of these statements to the factual grounds for her case. Accordingly, the court limits its analysis to the adverse employment actions that she alleges were actually taken against her.

which as a matter of law does not qualify as an adverse employment action.  *See Roberson*, 152 Fed. Appx. at 360.  Consequently, the court concludes that Dixon has failed to carry her burden at summary judgment of designating specific facts showing that a reasonable jury could find that she suffered an adverse employment action.  Accordingly, Moore Wallace is entitled to summary judgment on her Title VII discrimination claim.

V

Moore Wallace next moves for summary judgment as to Dixon's racially hostile work environment claim.

A

Title VII is violated "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986) (internal citations omitted)).  To establish a prima facie case of hostile work environment based on race, Dixon must show that (1) she belongs to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment complained of was based on race, (4) the harassment complained of affected a term, condition, or privilege of employment, and (5) Moore Wallace knew or should have known of the harassment in question and failed to take prompt

remedial action.  *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).[15]

The court focuses on the second and third components——that she was subjected to unwelcome harassment based on race.  Harassment is based on race if "the complained-of conduct had a racial character or purpose."  *Harris-Childs v. Medco Health Solutions, Inc.*, 2005 WL 562720, *6 (N.D. Tex. Mar. 10, 2005) (Means, J.), *aff'd*, 169 Fed. Appx. 913 (5th Cir. 2006) (per curiam) (unpublished) (agreeing with district court that appellant failed to show that harassment was racially based).  Dixon must demonstrate a "connection between the allegedly harassing incidents and [her] protected status." *Id.* Moreover, in addition to Dixon's subjective perception of the abusiveness of the environment, the environment must be such that a reasonable person would find it hostile or abusive.  *Vallecillo v. U.S. Dep't of Housing & Urban Dev.*, 155 Fed. Appx. 764, 767 (5th Cir. 2005) (unpublished opinion) (citing *Harris*, 510 U.S. at 21-22; *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003)), *cert. denied* ___ U.S. ___, 2006 WL 1725123 (June 26, 2006).  Whether an environment is hostile or abusive can be determined only by looking at the circumstances, including, *inter alia*, the frequency of the discriminatory conduct, its severity, whether it was physically

---

[15]The fifth element need not be established if the harassment is allegedly committed by the victim's supervisor.  *See Celestine v. Petroleos de Venez. SA*, 266 F.3d 343, 353-54 (5th Cir. 2001); *see also Faragher*, 524 U.S. at 807; *Burlington Indus.*, 524 U.S. at 765.

threatening or humiliating, and whether it unreasonably interfered with Dixon's work performance.  *Id.* (citing *Harris*, 510 U.S. at 23).

### B

Dixon contends that Burkholder's motive was to intimidate her, that he had a vendetta against her, and that his actions were based on her race.  She points to her affidavit as evidence of race-based harassment.  Specifically, she cites the allegations that, because of Burkholder's inappropriate behavior toward her, she requested that her desk be moved, which request was denied; Burkholder yelled at her and paced by her cubicle a couple of times in a threatening manner, and when she emailed Kasanders to complain, he responded that she not send him such emails; she went to the doctor about the stress reaction and it was suggested that she see a psychologist; and, after explaining to Kasanders that she did not feel safe returning to work and requested to work at home, she heard no response.

### C

A reasonable trier of fact could not find from this evidence that Dixon's workplace environment was such that a reasonable person would find it hostile, much less that any hostility was based on her race.  She states that Burkholder acted inappropriately, but she offers no explanation for what actions were inappropriate or why they were so.  A reasonable trier of fact

could not find that Moore Wallace's refusal to move her desk constituted hostility, given that she does not point to the incidents that precipitated the request.  A reasonable trier of fact would be left with the allegation that Burkholder yelled at her and stood near her in a threatening manner, which, even if unwelcome harassment, could not reasonably be connected to her race.  She complains of no racially-tinged comments or incidents in this section of her brief or otherwise.

Dixon appears to contend that the court can infer racial animus from the fact that other non-African-American employees were not subjected to the same hostile behavior.  She does not, however, identify instances where non-African-American employees engaged in conduct similar to that which she complains about, e.g., requested a change of location, and which did not illicit a hostile response.  The only evidence is that Burkholder's allegedly hostile responses to employees occurred regardless of race.  Dixon testified that Burkholder treated a Caucasian co-worker unprofessionally at times by yelling at him, and that he also had difficulty with Burkholder's personality.  In sum, she offers only her subjective belief that race was a motivating factor in this dispute, which is insufficient to state a claim for race-based harassment.  *See Harris*, 510 U.S. at 21-22; *Frank*, 347 F.3d at 138; *cf. Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *9 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (concluding plaintiff proffered evidence, when

viewed most favorably to him, permitting reasonable trier of fact to find that he was subject to harassment based on race where plaintiff's affidavit alleged racial slurs were used at workplace and three coworkers testified that racial slurs occurred at workplace for several years and that white coworkers constantly made racially disparaging remarks toward plaintiff).

The court therefore concludes that Dixon has failed to proffer evidence from which a reasonable trier of fact could find race-based harassment.   Accordingly, Moore Wallace is entitled to summary judgment on Dixon's hostile work environment claim.

VI

Moore Wallace next maintains that it is entitled to summary judgment dismissing Dixon's retaliation claim.

A

Where, as here, Dixon offers no direct evidence that Moore Wallace retaliated against her, the well-known method of proof set out in *McDonnell Douglas* applies.   *See Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001) (holding that McDonnell Douglas applies when plaintiff has presented only circumstantial evidence of retaliatory animus) (citing *Portis v. First Nat'l Bank*, 34 F.3d 325, 328 (5th Cir. 1994)).   The first step under *McDonnell Douglas* is that Dixon must establish a prima facie case of retaliation.   To do so, she must demonstrate that (1) she engaged in a protected activity, (2) an adverse employment action occurred,

- 28 -

and (3) a causal link existed between the protected activity and the adverse employment action. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).

B

Dixon alleges seven incidents of retaliation by Moore Wallace: (1) Kasanders failed to acknowledge or follow-up on her request for a 25% pay increase in retaliation for filing her EEOC charge; (2) Burkholder's comments in 2003 implying that she was not competent were made in retaliation for her July and August 2003 conversations with Jehli and Mayes; (3) Burkholder's email giving her an option to participate in programs during a trade show was made in retaliation for her refusal to attend another trade show; (4) requesting Dixon to pick up an extra trade show was made in retaliation for her July, August, and October 2003 complaints to Jehli about Burkholder yelling at her, his profanity, and that he blocked off her cubicle; (5) Burkholder miscommunicated information about product sourcing for upcoming trade shows; (6) Burkholder retaliated against her by holding the October 3, 2003 meeting with Jehli; and (7) the February 18, 2004 written warning was placed in her file because she filed the EEOC charge.

The court will assume *arguendo* that all the actions that Moore Wallace took constitute "adverse actions," i.e., "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination." *See Burlington N. & Santa Fe Ry.*, ___ U.S. at ___, 2006 WL 1698953, at *10 (internal quotation marks and citation omitted). Most of them——specifically, incidents two, three, four, five, and six——are not premised on any protected activity that Dixon engaged in. An employee engages in protected activity by (1) opposing an employment practice made illegal by Title VII, or (2) if he has "'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing'" under Title VII. *Long*, 88 F.3d at 304 (quoting 42 U.S.C. § 2000e-3(a)). Although the underlying practice need not be illegal, the employee must at least reasonably believe it to be so. *Id.*

Dixon's refusal to attend a trade show and her July, August, and October 2003 complaints to Jehli and Mayes are not protected activities under Title VII. A reasonable jury could not find that she was opposing an employment practice that Title VII makes unlawful or one that Dixon reasonably and in good faith believed Title VII made unlawful. She never mentioned racial animus in any of the complaints, which focused only on Burkholder's behavior. In fact, she did not complain to Moore Wallace about racial discrimination until January 30, 2004. She does not, however, allege that adverse action was taken against her as a result of this complaint. Finally, she does not state what precipitated Burkholder's purposeful miscommunication, i.e., what constituted

the protected activity.

Concerning Dixon's first complaint——that Moore Wallace failed to respond to her request for a pay increase——although filing an EEOC charge of course constitutes a protected activity, a reasonable trier of fact could not find that Moore Wallace took this action in response to her filing an EEOC charge.  Dixon requested the pay increase in October 2003, and she contends that Moore Wallace failed to acknowledge or follow-up on that request.[16] She did not file her EEOC charge until February 2004.  Therefore, four months had elapsed without a response to her request *before* Dixon even filed the charge.  She offers no argument for why Moore Wallace's failure beginning in February 2004 to follow-up on her request supports an inference of a causal link, when it had failed to respond to her request for the previous four months.  Rather, a reasonable trier of fact could only find that Moore Wallace made no change in its behavior following the EEOC charge, thus supporting the opposite inference: that there was no causal link.  The court thus concludes that Dixon has failed to proffer evidence from which a reasonable trier of fact could infer that the two events were linked.

---

[16]In its recitation of the facts, Moore Wallace contends that Kasanders "let [Dixon] know that he would be reviewing the department's functions and budgetary needs and would not be making any pay decisions at that time."  D. Br. 4.  In viewing the evidence in the light most favorable to Dixon, however, the court assumes that Moore Wallace did not respond to her request.

As to her seventh ground, Dixon has also failed to proffer evidence from which a reasonable trier of fact could infer a causal link between the filing of her EEOC charge on February 12 and the final warning placed in her file on February 18. Although there is a very short temporal interlude between the two events, this is alone insufficient to support an inference of a causal link. *See Akop v. Goody Goody Liquor, Inc.*, 2006 WL 119146, at *11 (N.D. Tex. Jan. 17, 2006) (Fitzwater, J.) (citing *McCarthy v. Primedia Workplace Learning, L.P.*, 2005 WL 3428191, at *4 n.2 (N.D. Tex. Dec. 6, 2005) (Lynn, J.) (concluding that temporal proximity between sexual harassment report and termination was insufficient to demonstrate pretext in context of Title VII retaliation claim and, alternatively, that plaintiff could not satisfy modified McDonnell Douglas burden)); *see also Little v. BP Exploration,* 265 F.3d 357, 363-64 (6th Cir. 2001) ("Temporal proximity alone is insufficient to establish a causal connection for a retaliation claim."). Moreover, Dixon does not proffer evidence that would permit a reasonable trier of fact to find that anyone at Moore Wallace even knew about the charge on February 18. Indeed, the only evidence in the summary judgment record is that on February 18, Kasanders, Burkholder, and Jehli did not yet know. Even when viewed in the light most favorable to Dixon, the only reasonable inference is that there was no causal link between the final written warning and her filing the EEOC charge. *See Chaney v. New*

*Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) (holding that, where employer was unaware of protected conduct at time of discharge, employer could not have retaliated against employee based on conduct). Because Dixon has failed to point to any specific facts that show there is a genuine issue for trial on this issue, Moore Wallace is entitled to summary judgment dismissing her retaliation claim.

VII

Finally, Moore Wallace moves for summary judgment on Dixon's constructive discharge claim.

Under Title VII, a resignation is actionable only when the resignation amounts to constructive discharge. *See Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). Demonstrating constructive discharge imposes a high burden. To carry this burden, Dixon "must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997).

Dixon argues superficially that there is significant evidence in this case that suggests that her circumstances were so intolerable that a reasonable employee would have felt forced to resign. Dixon does not cite specific summary judgment evidence or any legal authority in support of this contention. Moreover, the summary judgment evidence fails to support her contention. For

instance, when asked at her deposition why she resigned from Moore Wallace, she responded that she could not recall.  She has thus failed to carry her summary judgment burden of pointing to evidence from which a reasonable trier of fact could infer a triable issue that Moore Wallace made her "working conditions so intolerable that a reasonable employee would feel compelled to resign."  *Id.*

Finally, the Fifth Circuit has stated that "constructive discharge claims can be regarded as an aggravated case of hostile work environment."  *Vallecillo*, 155 Fed. Appx. at 768.  A constructive discharge requires a greater degree of harassment than a hostile work environment claim.  *Kinney Shoe Corp.*, 237 F.3d at 566 (citing *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998)).  As discussed *supra* at § V(C), Dixon has failed to establish a hostile work environment claim, and because she does not premise her constructive discharge claim on any different allegations, her constructive discharge claim fails as well.  *See Kinney Shoe Corp.*, 237 F.3d at 566; *see also Vallecillo*, 155 Fed. Appx. at 768 ("We agree with the district court's reasoning that because Appellant's hostile work environment claim has failed, his constructive discharge claim must also fail.").  Moore Wallace is thus entitled to summary judgment on Dixon's constructive discharge claim.

\*     \*     \*

For the reasons explained above, the court grants Moore Wallace's motion for summary judgment and dismisses this action with prejudice by judgment filed today.[17]

**SO ORDERED**.

July 13, 2006.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[17]Because the court is granting summary judgment on these bases, it need not reach any of the other arguments the parties raised in their briefing.